**TABLE OF CONTENTS**


I. INTRODUCTION .................................................................. 3

II. NATURE OF CASE .............................................................. 4

A. Statement of Facts ..................................................... 4

B. Plaintiffs' Legal Claims ............................................... 8

III. ARGUMENT OF LAW .......................................................... 9

A. Motion to Dismiss Standards ...................................... 9

B. Rule 12(b)(7) ............................................................... 10

C. There is no substantive due process claim .................. 11

1. There is no state created danger claim ............. 13

2. Shock the conscience claim fails ...................... 15

3. There is no special relationship claim .............. 16

D. The Equal Protection Claim is Not a Valid Claim ........ 17

E. Plaintiffs' Inadequate Policies and Protection Claim Is Insufficiently Pled .................................................. 18

F. Plaintiffs' Disability Discrimination Claim Does Not Meet Federal Statutory Requirements ....................... 19

G. Dr. Whitely and Mr. Brinkman are Entitled to Qualified Immunity .................................................. 21

H. Lakota is Entitled to Political Subdivision Immunity Under Chapter 2744 of the Ohio Revised Code ...... 23

I. There is no Loss of Filial Consortium Claim ............ 26

IV. CONCLUSION ................................................................... 26

# TABLE OF AUTHORITIES


Andrews v. Hickman Cnty., 700 F.3d 845, 853 (6th Cir. 2012)....... 21

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937,
173 L. Ed.2d 868 (2009)................................................................ 9

Ayers v. Cleveland, 160 Ohio St.3d 288, 2020-Ohio-1047,
156 N.E.3d 848.......................................................................... 24

Bellamy v. Bradley, 729 F.2d 416, 440 (6th Cir. 1984)................... 22

Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 270,
2007-Ohio-1946, 865 N.E.2d 9, ¶14............................................. 23

DeShaney v. Winnebago Cnty. Of Soc. Servs., 498 U.S. 189,
109 SD. Ct. 998, 103 L. Ed.2d 249 (1989)........................................ 16

Doe v. Adkins, 2021-Ohio-3389, ¶23, 178 N.E.3d 947.................... 24

Doe v. BMG Sports, LLC., 584 F. Supp.3d 497, 509
(S.D. Ohio 2022)......................................................................... 12

Doe v. City of Roseville, 296 F.3d 431, 439 (6th Cir. 2002)............. 22

Doe v. Claiborne Cnty., 103 F3d 495, 506 (6th Cir. 1996).............. 12, 15, 16, 18, 21

Doe v. Covington Cnty. Sch. Dist., 675 F.3d 849, 856 (5th Cir. 2012) . 16

Doe v. Miami Univ., 882 F.3d 579, 604 (6th Cir. 2018)......................... 21

Doe v. Warren Consol. Schs., 93 F. App'x 812, 818 (6th Cir. 2004).....

Estate of Romain v. City of Grosse Pointe Farms,
935 F.3d 485, 491 (6th Cir. 2019)........................................................ 13

G.C. v. Owensboro Pub. Sch., 711 F3d 623, 635 (6th Cir. 2013)....... 20

Glancy v. Taubman Ctrs., Inc., 373 F.3d 656, 666, (6th Cir. 2004).... 11

Jones v. Reynolds, 438 F.3d 685, 691 (6th Cir. 2006)...................... 13

K.B v. Waddel, 764 F.3d 821, 824 (8th Cir. 2014)............................ 16

Keene Grp., Inc. v. City of Cincinnati, 998 F.3d 306, 310, (6th Cir. 2021)... 10

Keller v. Foster Wheel Energy Corp., 163 Ohio App.3d 325, 2005-Ohio-4821, ¶19, 837 N.E.2d 859 (10th Dist.).................................. 25

Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed.2d 114 (1985)........................................................................... 10

Keweenaw Bay Indian Community v. Michigan, 11 F.3d 1341, 1345 (6th Cir. 1993)........................................................................... 11

Keys v. Humana, Inc. 684 F.3d 605, 608 (6th Cir. 2012)........................................................................................ 9

Leary v. Daeschner, 349 F.3d 888, 903 (6th Cir. 2003).......................... 17

Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 725 (6th Cir. 1996).... 15

McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 464 (6th Cir. 2006)..... 13, 14

Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978)................................................................ 18, 19

Patel v. Kent Sch. Dist., 648 F3d 965, 973 (9th Cir. 2011)...................... 16

Pineda v. Hamilton Cnty., Ohio, 977 F.3d 483, 490 (6th Cir. 2020)........ 17

Robbins v. New Cingular Wireless PCS, LLC, 854 F.3d 315, 319 (6th Cir. 2017) ........................................................................ 9

S.S. v. E. Ky. Univ., 532 F.3d 445, 452-453 (6th Cir. 2008).................. 19

Soper by Soper v. Hoben, 195 F.3d 845, 852 (6th Cir. 1999)................ 16

Stew Farm v. Natural Res. Conservation Serv., 967 F. Supp.2d 1164, 1169 (S.D. Ohio 2013)................................................. 10

Stiles v. Grainger Cnty., 819 F.3d 834, 853 (6th Cir. 2016) ................. 12

Sumpter v. Wayne Cnty., 868 F.3d 473, 480, (6th Cir. 2017)................ 21

Terry v. Tyson Farms, Inc. 604 F.3d 272, 275-76 (6th Cir. 2010)........... 9

Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005).... 19

## STATUTES

U.S.C. §1983 .......................................................................................... 12, 13

Fed. R. Civ. P. 8(a)(2) ............................................................................ 9

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 9

Fed. R. Civ. P. 19(a)(1)(A) ....................................................................... 11

Fed. R. Civ. P. 19(a)(1)(B) ....................................................................... 11

R.C. Chapter 2744 ................................................................................. 23

R.C. 2744.01(C)(2)(c) ...........................................................................25

R.C. 2744.02(A)(1) .............................................................................. 23, 24

R.C. 2744.02(B) .................................................................................. 24, 25

R.C. 2744.03(A) .................................................................................. 24

## SUMMARY OF ARGUMENT

The School Defendants have moved to dismiss the claims brought by the Plaintiffs in their Complaint. The Plaintiffs have failed to state claims upon which relief can be granted. First, the School Defendants argue that the Plaintiffs' Complaint fails to allege sufficient facts to state a plausible claim. Moreover, the Plaintiffs' Complaint should be dismissed for failure to join an indispensable party, that is, the biological father of Jill Doe. See Fed. R. Civ. P. 19; *Keweenaw Bay Indian Cmnty v. Michigan* 11 F.3d 1341, 1345 (6th Cir. 1993).

Plaintiffs' substantive due process claims based on Henrich's alleged sexual abuse of Jill Doe fail because there is no state created danger, no special relationship exists between Plaintiffs and the School Defendants, and Plaintiffs' Section 1983 claim under the shock the conscience test fails. *See Doe v. Claiborne Cnty.* 103 F.3d 495, 506 (6th Cir. 1996); *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.* 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed.2d 249 (1989); *Stiles v. Grainger Cnty.* 819 F.3d 834, 854 (6th Cir. 2016); *Lillard v. Shelby Cnty. Bd. Of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

Plaintiffs' equal protection claim is not supported by the allegations contained in Plaintiffs' Complaint. There is no *respondeat superior* liability under the equal protection clause of the Fourteenth Amendment. Moreover, there is no allegation that Dr. Whitely and Mr. Brinkman have supervisory liability under Section 1983 as they did not directly participate in or implicitly authorize the end constitutional conduct of Henrich. *See* U.S. Const. Amend. XIV; *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003).

Next, Plaintiffs' claim for inadequate policies and protection under Section 1983 does not meet the pleading requirements for a valid claim. It is insufficient to allege that a school district employed someone who violated the Plaintiffs' rights. Plaintiffs can also

not identify policy or custom that deprived the Jill Doe of her constitutional rights. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).

Next, Plaintiffs' disability discrimination claims under the ADA in Section 504 of the Rehabilitation Act are insufficiently pled under the statutory requirements. The complaints' allegations do not support a finding that Jill Doe was excluded from participation in any Lakota programs or activities. *See S.S. v. E. Ky. Univ.*,. 532 F.3d 445, 452-453 (6th Cir. 2008); *G. C. v. Owensborough Bup. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013).

The individual School Defendants, Dr. Whitely and Mr. Brinkman are entitled to qualified immunity because they did not violate a clearly established statutory or constitutional right of Jill Doe. *See Sumpter v. Wayne Cnty.* 868 F.3d 473, 480 (6th Cir. 2017); *Doe v. City of Roseville* 296 F.3d 431, 439 (6th Cir. 2002); *Bellamy v. Bradley*, 729 F.2d 416, 440 (6th Cir. 1984). With respect to Plaintiffs' claims under Ohio law, Lakota is entitled to political subdivision immunity for these claims. *See* R.C. 2744.02(B); *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9.

Finally, Jane Doe's loss of filial consortium claim is a derivative claim that depends on the existence of primary claims. Once the primary claims are dismissed then the derivative loss of consortium claim is also dismissed. *See Keller v. Foster Wheel Energy Corp.* 163 Ohio App.3d, 325, 2005-Ohio-4821 ¶ 19 837 N.E.2d 859 (10th Dist.).

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **JANE DOE, Individually and as Parent and next friend of Jill Doe, A minor** | : | **CASE NO.: 1:26-cv-00646** |
| | : | **JUDGE COLE** |
| **Plaintiff** | : | |
| **v.** | : | **DEFENDANT LAKOTA LOCAL SCHOOLS, ASHLEY WHITELY, AND BILL BRINKMAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| **LAKOTA LOCAL SCHOOLS, et al.** | : | |
| **Defendant** | : | |
| | : | |

Now come Defendants, Lakota Local School District Board of Education (improperly denominated as Lakota Local Schools by Plaintiffs) ("Lakota"), Ashley Whitely ("Dr. Whitely"), and Bill Brinkman ("Mr. Brinkman") (collectively "the School Defendants") and move this Court for an order dismissing Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). The motion is supported by the following memorandum of law and the pleadings filed herein.

Respectfully submitted,

***/s/Bernard W. Wharton***
Bernard W. Wharton 0063487
McCASLIN IMBUS & McCASLIN
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax
bwwharton@mimlaw.com
***Attorney for Defendants***
***Lakota Local School District Board of Education, Ashley Whitely and Bill Brinkman***

# MEMORANDUM

## I. INTRODUCTION

Plaintiffs have filed this action concerning the alleged grooming and sexual abuse of Plaintiff Jill Doe ("Jill Doe") by Defendant Ron Henrich ("Henrich"). Contrary to the basis allegations in the complaint, the School Defendants were unaware of the inappropriate relationship activities by Henrich. Indeed, Henrich and Jill Doe to this date have not cooperated with an investigation by the School Defendants and the appropriate law enforcement agencies.

## II. NATURE OF CASE

### A. Statement of Facts[1]

Lakota[2] is a political subdivision in the State of Ohio and employs Dr. Whitely as its Superintendent and Mr. Brinkman as the Principal at Lakota East Freshman School. Henrich is a former teacher who was employed by the Lakota Local School District Board of Education. Jill Doe is a current student at Lakota East High School. Plaintiff Jane Doe ("Jane Doe") is the biological mother of Jill Doe.

In the 2022-2023 school year, Jill Doe attended Liberty Junior School for the seventh grade. Prior to any interaction with Henrich, Jill Doe had been sexually abused by her father as a young child and had numerous mental health issues which included

---

[1] The Court must assume that all of the factual allegations in Plaintiffs' Complaint are true for the purposes of a motion to dismiss, however, the School Defendants vigorously deny many of the false and inaccurate statements Plaintiffs have made.

[2] Improperly denominated as Lakota Local Schools in Plaintiffs' Complaint and described as the District. A School District is a geographic area while it is the School Board that is the entity that can sue or be sued. R.C. §3313.17.

self-harm. She did not have healthy lasting friendships and lacked meaningful connections and relationships with others.

During her seventh-grade year, Henrich developed a relationship with her that went beyond school hours. Jill Doe and Henrich messaged each other on a computer app called Remind that was used by Lakota for student/teacher communications. However, there is no allegation that the account used by either Jill Doe or Henrich was a school account. Plaintiffs allege that Lakota failed to monitor these communications within the computer app.

Jane Doe was aware that her daughter spent excessive amounts of time on the Remind app because she reviewed her weekly screen time report. Jane Doe also was aware that Jill Doe was having extensive communications with Henrich but made the decision not to cut off the communications. Plaintiffs claim that if Lakota had monitored the activity on the Remind app then the developing, unsafe dynamic between Jill Doe and Henrich could have been recognized and prevented, yet Plaintiffs do not address the fact that Jane Doe was aware of this unsafe dynamic, seemingly approved of it, and possessed more knowledge of it than any of the School Defendants at that time.

In Jill Doe's 8th grade year, she attended meetings for the gifted program at Henrich's direction. Some of these gifted program meetings occurred during class. Jill Doe shared information with Jane Doe about these meetings.

On January 22, 2024, Jill Doe attempted suicide at school by ingesting 4,500 mg of Tylenol that she had secretly gathered. She experienced stomach pain and dizziness and reported this to the nurse and guidance counselor whereupon she was taken to the

hospital for psychiatric care. The Plaintiffs make no allegation as to the cause of Jill Doe's suicide attempt. Specifically, they do not allege that it was caused by anything that had occurred at school. Plaintiffs allege that Lakota failed to monitor Jill Doe when administering medication after this incident and specifically allege that in October 2025, while on a Lakota sponsored band trip to Florida, Jill Doe was allowed to self-administer her own medication. Ten days after the end of the band trip, Jill Doe was not able to take her anxiety medication because the nurse had failed to check the student's medication back into the office upon their return.

In the summer between Jill Doe's eighth and ninth grade years, Henrich continued to message her while school was not in session. These occurred on the Remind App. Their messages to each other became increasingly personal in nature and were viewed by Jane Doe. Plaintiffs allege Jane Doe became more concerned about the lack of boundaries of the relationship but does not allege that she informed any school official about these messages during the summer of 2024. Jane Doe implemented restrictions on Jill Doe's device to limit the time of day she could access the Remind App. Plaintiffs allege that no school employee monitored these messages or raised any concerns about the relationship between Henrich and Jill Doe. There is no allegation that any school employee was aware of these messages or the developing relationship.

In the 2024-2025 school year, Jill Doe began her ninth-grade year in the Lakota East Freshman building. Henrich was not assigned to do any work with the gifted program at this building and there was a new teacher assigned to the gifted program there. However, Henrich would continue to eat lunch with Jill Doe at her building on

each Friday. Jane Doe learned about these lunch meetings from Jill Doe and communicated directly with Henrich about them. Jane Doe subsequently told Jill Doe that she was not to eat lunch with Henrich in a one-on-one setting and that he could not bring her lunch.

The Remind App was no longer used at Lakota at the start of the 2024-2025 school year. Henrich then began contacting Jill Doe through her school email account and school Google Docs account. Plaintiffs allege that Lakota failed to monitor these accounts but do not allege that Lakota was aware of these communications.

In the 2024-2025 school year Jill Doe continued to meet with Henrich as he was mentoring her for her anxiety issues. Jill Doe was warned of possible consequences if she continued to be absent from her classes for meetings with Henrich. Jill Doe conveyed these warnings to Jane Doe. Jane Doe then questioned Henrich about these meetings and he attributed them to Jill Doe's anxiety and mental health issues. Jane Doe did not make a request to anyone at the school that these meetings stop. Jill Doe had been struggling with mental health due to her prior suicide attempt and psychiatric hospitalization. As a result, Jane Doe considered Henrich to be a trusted support person and did not want to eliminate Jill Doe's access to him.

During this 2024-2025 school year, Jane Doe saw Henrich visiting Jill Doe after band practice on several occasions. She did not complain about this to any school personnel. On January 29, 2025, Jill Doe and Jane Doe attended a scheduling information event for Jill Doe's upcoming tenth grade year and interacted with Henrich who was at the event. Henrich told Jane Doe that he was worried that she was

uncomfortable with his relationship with Jill Doe. Jane Doe simply told Henrich that they were trying to limit Jill Doe's interactions with him to diversify her relationships.

The next day, Henrich communicated with Jill Doe's therapist about developments in Jill Doe's mental health struggles. There is no allegation that any school personnel were aware of this contact or that Jane Doe had told school personnel that she was trying to limit Henrich's interactions with Jill Doe.

On March 20, 2025, Jane Doe requested to inspect Jill Doe's laptop and found that she was typing on a document that was shared with Henrich and it contained extremely sexually graphic content. This was a live document on which both Jill Doe and Henrich could type and then delete their communications. Jane Doe and her husband, Jill Doe's stepfather, immediately began recording the screen and captured almost an hour of explicit messages from Henrich. It is unclear whether Jill Doe was present while these messages were communicated to the laptop now controlled by Jane Doe and her husband. While these messages were being recorded, Jane Doe and husband called the Butler County Sheriff's Office to report the incident. The police came that night and were able to record additional messages on their body cameras.

The next day, March 21, 2025, Sheriff Deputies came to Lakota Schools to report the incident. The Plaintiffs allege that this incident was also reported to Butler County Children's Services and that they never heard from the school resource officer during the investigation. That same day, Jane Doe and her husband requested a meeting with Mr. Brinkman and a Lakota guidance counselor. In this meeting, Mr. Brinkman informed them that Henrich was immediately placed on administrative leave until the investigation by the police was completed. He also informed them that Henrich would not be allowed

to enter any District buildings during his administrative leave. Jane Doe then requested that Jill Doe not have access to a laptop or any of her Lakota computer accounts and this was agreed to by Mr. Brinkman.

Henrich then retired from his employment with Lakota. Although the police investigation was begun on March 20, 2025, there still have been no criminal charges brought against Henrich to date. After Henrich was removed from Lakota School premises on March 21, 2025, he retired and is no longer an employee of Lakota. However, his relationship with Jill Doe has continued. In December 2025, Jill Doe used another student's cell phone to secretly contact Henrich. A student reported this to Lakota and Lakota immediately reported it to law enforcement.

A few days later, Jill Doe left the school grounds to meet Henrich in his vehicle. This occurred after the school day during the time for band practice. Finally, in January 2026, Jane Doe sought a protection order prohibiting Henrich from contacting Jill Doe.

**B. Plaintiffs' Legal Claims**

In their complaint Plaintiffs have alleged ten causes of action:

(1) Section 1983 claim of state created danger against all Defendants

(2) Section 1983 claim alleging special relationship against all Defendants

(3) Section 1983 under the shocks the conscience test against Defendants Henrich, Lakota and Dr. Whitely

(4) Section 1983 claim alleging violation of equal protection clause against all Defendants

(5) Section 1983 claim alleging inadequate policies and protection against Lakota

(6) Disability discrimination under the ADA and Section 504 of the Rehabilitation Act against Lakota

(7) Negligent care and supervision and negligence per se against all Defendants

(8) Negligent infliction of emotional distress against all Defendants

(9) Intentional infliction of emotional distress against Defendant Ron Henrich

(10) Plaintiff mother's loss of filial consortium claim against all Defendants

## III. ARGUMENT OF LAW

### A. Motion to Dismiss Standards

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must present sufficient facts to 'state a claim to relieve that is plausible on its face'". *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw a reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009). A "plausible" claim for relief does not require a showing of probable liability, rather, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id*. The complaint must allege sufficient facts or, in other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to the relief. *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012) (quoting *Fed. R. Civ. P. 8(a)(2)*).

To meet this pleading standard, the complaint must set forth "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 275-76 (6th Cir. 2010) (citation omitted). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id*. at 276. A dismissal is required where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim."

*Stew Farm v. Natural Res. Conservation Serv.,* 967 F. Supp.2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310, (6th Cir. 2021). But that does not mean that the Court must assume everything that plaintiffs allege as true, no matter how unsupported. The court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. The Court should bear in mind that the allegations in the complaint are just that – allegations.

Plaintiffs have brought official capacity claims against Dr. Whitely and Mr. Brinkman as well as claims against them in their individual capacity. Official capacity suits are essentially "against an entity in which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed.2d 114 (1985). In effect, an official capacity suit against Dr. Whitely and Mr. Brinkman is, in fact, a suit against Lakota. Because official capacity claims against Dr. Whitely and Mr. Brinkman constitute claims against Lakota, this means that certain claims are duplicative of those brought against Lakota and therefore subject to the same arguments for dismissal. Accordingly, Dr. Whitely and Mr. Brinkman move to dismiss the official capacity claims against them to the extent that the same claims against Lakota are dismissed.

**B. Rule 12(b)(7)**

The School Defendants have moved to dismiss Plaintiffs' complaint because Plaintiffs have failed to join an indispensable party, namely, the biological father of Jill

Doe. Assessment of the question of joinder under Rule 19 of the Federal Rules of Civil Procedure involves a three-step process. *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993). "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666, (6th Cir. 2004). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id.* "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id.*

Under Rule 19, there are two categories of parties that are considered indispensable. The first are those parties in whose "absence the court cannot accord complete relief among the existing parties". *Fed. R. Civ. P. 19(a)(1)(A)*. The other category are those parties that "[claim] an interest relating to the subject of the action," and whose absence "may ...impede [that party's] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Fed. R. Civ. P. 19(a)(1)(B)*.

Jane Doe has brought claims in her own right for loss of consortium as well as claims on behalf of Jill Doe as a minor. Just as Jane Doe has claims for loss of consortium, Jill Doe's biological father has those same types of claims. He must be part of this lawsuit to avoid exposing the School Defendants to the risk of incurring multiple liability. Since the biological father has identical claims to those brought by Jane Doe, Rule 19 considers him to be indispensable since his claim and interest relates to the

subject of this lawsuit and his absence exposes the School Defendants to the substantial risk of incurring multiple obligations. Accordingly, this matter should be dismissed because the Plaintiffs have failed to join an indispensable party, or, in the alternative, the biological father must be joined as party Plaintiff because he has the same claim that Jane Doe has brought.

**C. There is No Substantive Due Process Claim**

State actors who commit sexual assaults "deprive" their victim of her "liberty" interest and bodily integrity within the meaning of the due process clause. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996). Such claims are brought under 42 U.S.C. §1983. §1983 does not create any substantive rights, but rather, it provides a vehicle for addressing violations of other rights. *Doe v. BMG Sports, LLC.*, 584 F. Supp.3d 497, 509 (S.D. Ohio 2022). Section 1983 allows a party to bring "an action at law, suit in equity, or other proper proceeding for redress, "against any "person who, under color of [state law]" deprives the party of any rights "secured by the Constitution and [federal] laws." *Id*. (quoting 42 U.S.C. §1983). To succeed in a §1983 action, the Plaintiff must plead facts that plausibly show that the defendant violated a right bestowed upon a plaintiff by federal law, and that the defendant did so while acting "under color of" state law. *Id.*

The 6th Circuit has stated that "[t]he purpose of the due process clause is 'to protect the people from the State, not to ensure that the State protect[s] them from each other.'" *Stiles v. Grainger Cnty.*, 819 F.3d 834, 853 (6th Cir. 2016) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed.2d 249 (1989)). *DeShaney* established the rule that the State's failure to protect an

individual against private violence does not constitute a violation of the Due Process Clause. *DeShaney*, 498 U.S. at 197. This is the case "even in the face of 'undeniably tragic' and 'calamitous' circumstances." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir. 2006).

Plaintiffs in the instant matter allege three exceptions to the general rule in *DeShaney*: (1) the state-created danger exception; (2) the special relationship exception; and (3) the shock the conscience exception. Because the Plaintiffs' allegations fail to fulfill the legal requirements for each of these exceptions, these claims should be dismissed.

**1. There is no state-created danger claim**

The Sixth Circuit has established that, to prevail on a state-created danger theory, a plaintiff must establish three elements:

(1) an affirmative act that creates or increases the risk to the plaintiff;

(2) a special danger to the plaintiff as distinguished from the public at large; and

(3) the requisite degree of state culpability.

*Stiles v. Grainger Cnty., Tenn.*, 819 F.3d 834, 854 (6th Cir. 2016).

The state-created danger exception is a "demanding standard for constitutional liability". *Jones v. Reynolds,* 438 F.3d 685, 691 (6th Cir. 2006). The Sixth Circuit has also described this exception as "an anomaly" because it allows plaintiffs to bring Due Process claims under §1983 for harms caused by private actors," yet, "neither the Fourteenth Amendment nor §1983 regulates private actors." *Estate of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 491 (6th Cir. 2019).

Plaintiffs' complaint contains no allegations of an affirmative act by any of the School Defendants. To the contrary, Plaintiffs uniformly allege that the School Defendants failed to act by failing to monitor communications, failing to investigate, failing to supervise, and failing to discipline. Plaintiffs specifically allege in their claim for relief under the state-created danger doctrine that the School Defendants "fail to prevent the sexual abuse of Jill Doe, fail to identify clear signs of abuse, fail to supervise Jill Doe or Defendant Henrich, and fail to intervene to stop the abuse." (Plaintiffs' Complaint at ¶ 91). These are not affirmative acts that are required under the state-created danger doctrine.

Plaintiffs have also failed to allege that the purported affirmative acts created or increased the risk to the Plaintiff. "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." *Stiles*, 819 F.3d at 854. "Even affirmatively returning a victim to a preexisting situation of danger does not create or increase the victim's risk of harm." *Id*. at 855. The Sixth Circuit "set a high bar for the special danger requirement." *McQueen v. Beecher Cmty. Sch.,* 433 F.3d 460, 468 (6th Cir. 2006).

Nowhere in their complaint do Plaintiffs allege that there were affirmative acts that increased the dangers specifically to Jill Doe as compared to the public at large. Plaintiffs have not identified in their complaint the specific risk to Jill Doe in any of their allegations with respect to the actions of either Dr. Whitley or Mr. Brinkman. Plaintiffs have failed to produce sufficient allegations to state a claim for state-created danger. Accordingly, this claim should be dismissed against the School Defendants.

**2. The shock the conscience claim fails**

Plaintiffs' shock the conscience claim is brought under §1983, not Title IX. Under the Due Process Clause of the Fourteenth Amendment, to allege a plausible claim, a Plaintiff must allege that (1) she was "deprived of a right secured by the constitution" and (2) such deprivation occurred under color of state law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 511 (6th Cir. 1996). The Due Process Clause of the Fourteenth Amendment "protects the right of a child to be free from sexual abuse inflicted by a public school employee or teacher." *Doe v. Warren Consol. Schs.*, 93 F. App'x 812, 818 (6th Cir. 2004). When evaluating whether a defendant's sexual abuse violates the Due Process Clause, the court asks whether the abuse of power by the official is so offensive and indefensible as to shock the conscience of the court. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

Clearly, this test is appropriate for examining the allegations against Henrich, however, Plaintiff has brought the same type of claim against Lakota and Dr. Whitely. There is no allegation that Dr. Whitely sexually abused Jill Doe. The only person identified as sexually abusing Jill Doe is Henrich. There are no specific allegations against Dr. Whitely that she was aware of any inappropriate conduct by Henrich prior to March 21, 2025 when the Butler County Sheriff Detectives appears at Lakota Schools. Plaintiffs have made no allegations that support a shock the conscience claim against either Lakota or Dr. Whitely.

The allegations against both Lakota and Dr. Whitely also do not allege an abuse of power that is so offensive and indefensible as to shock the conscience of the court. There are no allegations that any school official, including Dr. Whitely, were aware of the

alleged abuse by Henrich prior to the police investigation starting March 20, 2025. None of the allegations against either Lakota or Dr. Whitely describe conduct that was so offensive as to meet the shock the conscience test. Conduct that may be described as "wholly inappropriate" has been found by the Sixth Circuit to not shock the conscience. *Lillard,* 76 F.3d at 726. In short, Plaintiffs' allegations against Lakota and Dr. Whitely are insufficient to establish a shock the conscience claim under Section 1983 and it should be dismissed against them.

**3. There is no special relationship claim**

A special relationship between school officials and a student does not arise "from the state's knowledge of the individual's predicament or from its expressions of intent to help [her], but from the limitation which it has imposed on [her] freedom to act on [her] own behalf. *DeShaney,* 489 U.S. at 200. The Sixth Circuit has held that in loco parentis status does not sufficiently restrain students to raise a school's common law obligation to the rank of a constitutional duty. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 510 (6th Cir. 1996). The special relationship doctrine generally is limited to "incarceration, institutionalization or other similar restraint of personal liberty". *DeShaney,* 498 U.S. at 200, 201 n.9.

It is also notable that, since *DeShaney*, many other circuit courts that address the issue have found that no special relationship exists between students and school administrators. *Soper by Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999); *Stiles*, 819 F.3d at 854; *K.B v. Waddel*, 764 F.3d 821, 824 (8th Cir. 2014); *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 856 (5th Cir. 2012) (en banc); *Patel v. Kent Sch. Dist.*, 648 F3d 965, 973 (9th Cir. 2011). Accordingly, because Plaintiffs have failed to allege facts

establishing a special relationship, this claim should be dismissed against the School Defendants.

**D. The Equal Protection Claim is Not a Valid Claim**

Plaintiffs allege in this claim that Defendants Lakota, Dr. Whitely, and Mr. Brinkman violated Jill Doe's right to equal protection under the Fourteenth Amendment by failing to protect her from sexual abuse by Defendant Henrich (Lakota) or discriminating against Jill Doe as a victim of sexual abuse by an inadequate response after the abuse of Jill Doe was discovered (Dr. Whitely and Mr. Brinkman). The Equal Protection clause of the Fourteenth Amendment dictates that no state shall "deny to any person within its jurisdiction to equal protection of the laws." U.S. Const. amend. XIV, §1. To be liable for a constitutional violation, a defendant must have committed the violation through their "own individual actions." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020). A defendant cannot be held liable based on "proximity" to wrongdoing or under *respondeat superior* principals. *Id.* To establish individual supervisory liability under §1983, a plaintiff must show that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it, or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Liability "must be based on more than the right to control employees. Likewise, simply awareness of an employee's misconduct does not lead to supervisor liability." *Id*.

Plaintiffs have brought their equal protection claim against Lakota, Dr. Whitely, and Mr. Brinkman, yet have failed to allege sufficient facts to constitute individual supervisory liability under Section 1983 on behalf of Dr. Whitely or Mr. Brinkman. There are no

allegations that either Dr. Whitely or Mr. Brinkman encouraged Henrich's specific incidents of misconduct. There are no allegations that Dr. Whitely or Mr. Brinkman directly participated in Henrich's misconduct or authorized, approved, or acquiesced in Henrich's unconstitutional conduct. There are no allegations that Dr. Whitely or Mr. Brinkman were aware of Henrich's misconduct. Rather, the allegations seem to be that they should have known of Henrich's misconduct. Such an allegation does not lead to supervisor liability and the equal protection claim against Dr. Whitely and Mr. Brinkman should be dismissed.

As for the claims against Lakota, there are no specific allegations in Plaintiffs' Complaint that trigger an equal protection claim against Lakota. Accordingly, this claim should be dismissed against the School Defendants.

### E. Plaintiffs' Inadequate Policies and Protection Claim is Insufficiently Pled

Plaintiffs' claim for inadequate policy and protection under §1983 allege that the failure to implement adequate policies directly contributed to the harm Jill Doe suffered and demonstrated deliberate indifference to her rights. This is a claim for municipal liability against Lakota. To bring such a claim against Lakota, the Plaintiffs must "establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996). It is insufficient to allege that a municipality employed someone who violated a plaintiff's rights. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).

To establish municipal liability under *Monell*, the plaintiff must establish the existence of a policy or custom based on "(1) the municipality's legislatives enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff must also demonstrate a direct causal link between the alleged policy accustom and the constitutional deprivation. *Claiborne Cnty.*, 103 F3d at 508.

Plaintiffs appear to be bringing a failure to train and supervise claim that they have called inadequate policies and protection claim. Plaintiffs describe the lack of inadequate policies, training, supervision, and accountability as constituting deliberate indifference to Jill Doe's constitutional rights. What Plaintiffs do not allege are specific policies or customs that would suffice to establish *Monell* liability. Plaintiffs' Complaint contains no allegations showing how inadequate policies and protection allowed Jill Doe to be sexually abused. Plaintiffs do make that conclusory statement, but the factual allegations to support it do not exist in Plaintiffs' Complaint. Furthermore, the Plaintiffs do not allege any actions taken by School Board members who are the sole policy makers in an Ohio public school district. *See* R.C. §3313.17 and §3313.47.

### F. Plaintiffs' Disability Discrimination Claim Does Not Meet Federal Statutory Requirements

Plaintiffs have brought a disability discrimination claim under both the ADA and §504 of the Rehabilitation Act. Claims brought under these two statutes are treated in the same manner, and courts analyze such claims together. *S.S. v. E. Ky. Univ.*, 532

F.3d 445, 452-453 (6th Cir. 2008). The requirements for a claim of disability of discrimination under §504 of the Rehabilitation Act are:

(1) the plaintiff is a handicapped person under the Act;

(2) the plaintiff is otherwise qualified for participation in the program;

(3) the plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of her handicap; and

(4) the relevant program or activity is receiving federal or financial assistance.

*G.C. v. Owensboro Pub. Sch.*, 711 F3d 623, 635 (6th Cir. 2013).

Plaintiffs' allegation that Jill Doe was the subject of disability discrimination under the ADA in Section 504 of the Rehabilitation Act when Lakota failed to provide her accommodations after she returned to school when Henrich's abuse was discovered and reported to the police and to Lakota. Plaintiffs are not making the claim that Lakota discriminated against Jill Doe based on her alleged disability and such discrimination led to her sexual abuse. Rather, this claim centers on Lakota's response to Jill Doe's return to school after the police investigation was brought to the school's attention.

Plaintiffs allege that Jill Doe was excluded from participation in programs or activities which exceed federal financial assistance because teachers made verbal comments towards Jill Doe about her technology restrictions imposed by Jane Doe while Jill Doe was at school. However, Plaintiffs' allegations do not state a proper claim of disability discrimination because she has not sufficiently alleged that she was excluded from participation in or denied the benefits of the educational programs at Lakota. Plaintiffs allege that it was Jane Doe that prohibited Jill Doe from using technology and required her to receive paper assignments. The allegations that the

teacher made Jill Doe feel like she was being disciplined for using technology inappropriately are insufficient to trigger a disability discrimination claim against the ADA or the Rehabilitation Act. Plaintiffs also make standalone allegations that Jill Doe's attempted overdose on Tylenol at school and the single day Jill Doe did not receive medication after the band trip in October of 2025, but these are insufficient again to state a claim under the ADA or the Rehabilitation Act. In short, Plaintiffs simply have not made the necessary allegations to sufficiently state a claim under the ADA or the Rehabilitation Act against Lakota and this claim should be dismissed.

### G. Dr. Whitely and Mr. Brinkman are Entitled to Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from liability so long as their conduct does not violate a clearly established statutory or a constitutional right of which a reasonable person would have known. *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012). Courts use a two-part test to determine whether a government official is entitled to qualified immunity. First, they determine whether, "the officials conduct violated a constitutional right." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480, (6th Cir. 2017). If the answer is in the affirmative, then courts must determine "whether the right at issue was clearly established at the time of the incident. *Id.* If either prong is not met, then the government official is protected by qualified immunity. *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018).

The Sixth Circuit has held that students have a "clearly established right under the substantive component of the due process clause to personal security and to bodily integrity." *Doe v. Claiborne Cty.*, 103 F.3d 495, 506 (6th Cir. 1996). The right to bodily

integrity "embraces the right to be free from sexual abuse at the hands of a public school employee." *Id.* Accordingly, if Jill Doe was sexually abused, she had a clearly established constitutional right to be free from such abuse.

However, Dr. Whitely and Mr. Brinkman are entitled to qualified immunity because they did not violate a clearly established right. There is no allegation that Dr. Whitely or Mr. Brinkman actually abused Jill Doe. Rather, the Plaintiffs argue that Dr. Whitely and Mr. Brinkman are liable for constitutional injuries caused directly by Henrich. Essentially, Plaintiffs are making a supervisory liability claim. For their Section 1983 claim to survive, they must establish supervisory liability. *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002).

"It is not enough for the plaintiff to show that the defendant's supervisors were sloppy, reckless, or negligent in the performance of their duties." *Id*. Rather, "a plaintiff must show that, in light of the information the defendants possessed, the teacher engaged in the sexual abuse showed a strong likelihood that he would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of the students. *Id*. The Sixth Circuit has held that a defendant's conduct must amount to "a tacit authorization of the abuse." *Id.* Generally, a mere failure to act is insufficient. *Bellamy v. Bradley*, 729 F.2d 416, 440 (6th Cir. 1984).

Plaintiffs' allegations against Dr. Whitely and Mr. Brinkman do not meet this standard. Plaintiffs have made various allegations about failure of Mr. Brinkman to act after the alleged sexual abuse was discovered. There are no allegations that Mr. Brinkman was aware of Henrich's conduct before the Butler County Sherrif's

Department showed up at Lakota East Freshman School to investigate. The same applies for the allegations against Dr. Whitely. The Plaintiffs' allegation center around Dr. Whitely's actions or failure to act after the police began their investigation. Essentially, Plaintiffs' allegations against Dr. Whitely are that she failed to be responsive to the Plaintiffs' attempts to gain information. None of the actions of Mr. Brinkman or Dr. Whitely as alleged by the Plaintiffs amount to a tacit authorization of the abuse by Henrich. The record for the Plaintiffs' allegations do not show that Dr. Whitely and Mr. Brinkman infringed upon Jill Doe's right to be free from sexual abuse in school. Therefore, Dr. Whitely and Mr. Brinkman are entitled to qualified immunity on Plaintiffs' Section 1983 claims against them.

### H. Lakota is entitled to Political Subdivision Immunity under Chapter 2744 of the Ohio Revised Code

Plaintiff has alleged several state law claims that are subject to political subdivision immunity under Ohio law. These claims are based on allegations of negligent care and supervision, and negligence per se as to the School Defendants, as well as a negligent infliction of emotional distress claim against the School Defendants. Because the political subdivision immunity precludes these claims, they should be dismissed. R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, ¶14. First R.C. Chapter 2744.02(A)(1) provides the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or

omission of the political subdivision...in connection with a governmental or proprietary function." *Ayers v. Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047, 156 N.E.3d 848.

Once the political subdivision establishes that it is immune from tort liability under R.C. Chapter 2744.02(A)(1), the plaintiff then bears the burden to show that one of the exceptions found in R.C. Chapter 2744.02(B) applies and removes the general grant of immunity. Under this statutory section, the exceptions to the general rule of immunity are as follows:

> 1. Political subdivisions are liable to injury caused by the negligent operation of any motor vehicle by their employees when their employees are engaged within the scope of their employment and authority. (**motor vehicle liability**).
>
> 2. Political subdivisions are liable for the injury caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision. (**proprietary functions**).
>
> 3. Political subdivisions are liable for injury caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads. (**public roads liability**).
>
> 4. Political subdivisions are liable for injury caused by the negligence of their employees for that occurs within or on the grounds of, and is due to, physical defects within or on the grounds of the buildings that are used in connection with the performance of governmental function. (**physical defects liability**).
>
> 5. Political subdivisions are liable for injury when civil liability is expressly imposed upon the political subdivision by a section of the revised code. (**express statutory liability**).

If the Plaintiff establishes that one the R.C. Chapter 2744.02(B) exceptions applies, then the political subdivision may assert one of the defenses found in R.C. 2744.03(A) to reinstate immunity. *Doe v. Adkins*, 2021-Ohio-3389, ¶23, 178 N.E.3d 947.

Plaintiff has brought claims of negligent care and supervision, negligence per se and negligent infliction of emotional distress against Lakota. None of these claims are

valid pursuant to the political subdivision immunity doctrine. First, Plaintiff cannot establish that one of the exceptions to the general rule of immunity apply to remove Lakota's grant of immunity under R.C. Chapter 2744.02(B). In its seventh cause of action, Plaintiffs allege negligent failure to supervise students and teachers. These allegations do not fit into any of the five exceptions noted above to the general rule of immunity. There are no allegations that motor vehicles, public roads or physical defects in school buildings pertain to the Plaintiffs' negligence claims against Lakota. Plaintiffs have not cited to any specific statutory section of the Ohio Revised Code that express impose liability. Finally, the proprietary functions liability does not apply because any action taken by Lakota was done in furtherance of a governmental function and not a proprietary function. R.C. Chapter 2744.01(C)(2)(c) states that a governmental function includes "[the] provision of a system of public education." Plaintiffs' allegations clearly address the manner in which Lakota provided public education and thus allege that Lakota was involved in a governmental function and not a proprietary function. Accordingly, Plaintiffs' negligence claims against Lakota should be dismissed because Lakota is immune to such claims because no exceptions to the general rule of immunity apply.

Plaintiffs have also brought a negligent infliction of emotional distress claim against Lakota. As noted above, Lakota is immune to the negligence claims because it was involved in a governmental function. Accordingly, the negligent infliction of emotional distress claim against Lakota should also be dismissed.

### I. There is No Loss of Filial Consortium Claim

A loss of consortium claim is a derivative claim. Generally, a derivative claim is dependent upon the existence of the primary claim. *Keller v. Foster Wheel Energy Corp.*, 163 Ohio App.3d 325, 2005-Ohio-4821, ¶19, 837 N.E.2d 859 (10th Dist.). To the extent that Plaintiff is brining a loss of filial consortium claim against the School Defendants for physical injury to Jill Doe, such a derivative claim is barred if the primary claims on which it is based are precluded by law. As noted above, the state law claims against Lakota are barred by the political subdivision immunity and thus, Jane Doe's loss of filial consortium claim is also barred. To the same extent that the claims against Dr. Whitely and Mr. Brinkman for physical injury to Jill Doe are insufficient, Jane Doe's loss of filial consortium claim also fails.

## IV. CONCLUSION

For the foregoing reasons, the School Defendants respectfully request that the court dismiss the Complaint with prejudice to the extent the claims are addressed above.

Respectfully Submitted,

***/s/Bernard W. Wharton***

Bernard W. Wharton 0063487
McCASLIN IMBUS & McCASLIN
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax

bwwharton@mimlaw.com
***Attorney for Defendants Lakota Local School District Board of Education, Ashley Whitely and Bill Brinkman***

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served via the U.S. District Court electronic system to all parties of record this 15th day of September, 2026.

***/s/ Bernard W. Wharton***